STATE OF CONNECTICUT *v.* KENT K. HUEY
(12536)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued December 10, 1985—decision released March 11, 1986

*Joette Katz,* public defender, with whom, on the brief, was *Jon C. Blue,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *Dennis A. Santore,* state's attorney, and *Lawrence J. Tytla,* deputy assistant state's attorney, for the appellee (state).

CALLAHAN, J. This is an appeal, after certification, from a judgment of the Appellate Court affirming a sentence of imprisonment imposed by the trial court after a plea of guilty. In his appeal to the Appellate Court, the defendant raised several claims of error related to his sentencing. The Appellate Court unanimously affirmed the judgment of the trial court but was not unanimous in its reasoning concerning one issue and Judge Dupont filed a separate opinion concurring in the result only. We granted certification to review the decision of the Appellate Court as to that one issue. That issue is: When imposing sentence for the crime of sexual assault in the third degree, did the sentencing judge improperly consider the defendant's denial that sexual intercourse, i.e. penetration, had occurred and thereby deprive the defendant of due process of law?

The opinion of the Appellate Court fully describes both the underlying facts and the procedural history

of this case. *State* v. *Huey,* 1 Conn. App. 724, 476 A.2d 613 (1984). Briefly, the defendant was originally charged with burglary in the first degree and sexual assault in the first degree[1] as a result of his knife point sexual assault of a neighbor on April 11, 1979, after he had surreptitiously entered her apartment. After lengthy negotiations the defendant entered a plea of guilty to a substitute information charging him with sexual assault in the third degree,[2] a class D felony. Sexual intercourse, i.e., penetration, is not an element of the crime of sexual assault in the third degree. General Statutes § 53a-65 (3).[3] The trial court imposed a

---

[1] "[General Statutes (Rev. to 1979)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony."

[2] "[General Statutes (Rev. to 1979)] Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person whom such person knows to be related to such person within any of the degrees of kindred specified in section 46b-21.

"(b) Sexual assault in the third degree is a class D felony."

[3] General Statutes (Rev. to 1979) § 53a-65 provides in pertinent part: "DEFINITIONS. As used in this part, the following terms have the following meanings:

"(1) 'Actor' means a person accused of sexual assault.

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other.

sentence of imprisonment of not less than two nor more than four years, a sentence within the statutory limits and less than the maximum. General Statutes (Rev. to 1979) § 53a-35 (b) (4) and (c) (2).[4]

During the sentencing procedure, the state, in its presentation, told the court that if there had been a trial the victim would have testified that penetration had occurred. In response to a question by the court, the defendant denied penetration. The sentencing judge, *Borden, J.,* then informed the defendant that he had read defense counsel's sentencing memorandum

"(3) 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor."

[4] General Statutes (Rev. to 1979) § 53a-35 provides as follows: "Sec. 53a-35. IMPRISONMENT FOR FELONY: INTERDETERMINATE; MAXIMUM AND MINIMUM SENTENCES. (a) A sentence of imprisonment for a felony shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed, the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d).

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment; (2) for a class B felony, a term not to exceed twenty years; (3) for a class C felony, a term not to exceed ten years; (4) for a class D felony, a term not to exceed five years; (5) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime; and (6) for a capital felony, life imprisonment unless a sentence of death is imposed in accordance with section 53a-46a.

"(c) Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years; (2) for a class B, C or D felony the court may fix a minimum term of not less than one year nor more than one-half of the maximum term imposed, except that (A) where the maximum is less than three years the minimum term may be more than one-half the maximum term imposed or (B) when a person is found guilty under section 53a-59 (a) (1), section 53a-59a, 53a-101 (a) (1) or 53a-134 (a) (2), the minimum term shall be not less than five years and such sentence shall not be suspended or reduced . . . (3) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime. . . ."

and the probation department's presentence report. This material contained information indicating that sexual intercourse had occurred and that penetration had in fact taken place. The judge then asked the defendant for his version of the incident. In response, the defendant admitted the sexual assault on the victim, but again denied that there had been penetration. In his remarks prior to sentencing, the judge said that it was very difficult in view of the circumstances "to accept the defendant's version that there was no sexual intercourse here" and that the defendant's "unwillingness or inability to admit [it] to himself or yourself . . . undercuts in my mind a truly rehabilitative effort."

We must therefore decide whether the Appellate Court was correct when it affirmed the sentence of the trial court. The majority opinion of the Appellate Court found the sentence was not improper and identified the issue to be essentially a claim that the sentence was excessive and determined that that claim belonged before the sentence review division. *State* v. *Huey,* supra, 735. The minority opinion found the sentence warranted under the circumstances and concurred in the result. *State* v. *Huey,* supra, 740. Judge Dupont reasoned, however, that as a matter of due process the trial court, when sentencing, should not have considered the defendant's denial of an element of a crime with which he was no longer charged and to which he had not pleaded guilty. *State* v. *Huey,* supra, 736. On an appeal, after certification from the decision of the Appellate Court, "the focus of our review is not the action of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo." *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985). We need only consider those issues which have been raised by the petition for certification. In the present case, therefore, we must determine whether, at sen-

tencing, the trial court, by considering the defendant's denial of penetration as indicative of a lack of potential for rehabilitation, violated the defendant's right to due process.

As the Appellate Court recognized, if a sentence is within statutory limits it is not generally subject to modification by a reviewing court. *United States* v. *Bernard,* 757 F.2d 1439, 1444 (4th Cir. 1985); *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982). "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial." *United States* v. *Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972). "Of necessity much of the information garnered by the probation officer will be hearsay. . . ." *United States* v. *Doyle,* 348 F.2d 715, 721 (2d Cir.), cert. denied, 382 U.S. 843, 86 S. Ct. 89, 15 L. Ed. 2d 84 (1965); General Statutes § 54-91a (c). To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt; *United States* v. *Baylin,* 696 F.2d 1030, 1039 (3d Cir. 1982); evidence of crimes for which the defendant was indicted but neither tried nor convicted; *United States* v. *Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977); evidence bearing on charges for which the defendant was acquitted; *United States* v. *Sweig,* supra, 184; and evidence of counts of an indictment which has been dismissed by the government. *United States* v. *Marines,* 535 F.2d 552, 554 (10th Cir. 1976). "[A] dismissed indictment and the charge contained in it are within the kind of information which a court may properly consider in passing sentence. The plea bargain and the indictment dismissal resulting from it did not and, indeed could not, deprive the judge of the right and probably the duty of giving consideration to it." *United States* v. *Majors,* 490 F.2d 1321, 1324 (10th Cir. 1974).

The trial court in imposing a sentence is not limited to a consideration of the count to which the defendant pleaded guilty. "The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum." *United States* v. *Doyle,* supra.

"Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . ." *United States* v. *Robelo,* 596 F.2d 868, 870 (9th Cir. 1979). Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. *Williams* v. *Oklahoma,* 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). It is a fundamental sentencing principle that a sentencing judge may "appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. *United States* v. *Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982). As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion. See *United States* v. *Campbell,* 684 F.2d 141, 154 (D.C. Cir. 1982); *United States* v. *Robelo,* supra.

To hold otherwise would be to adopt an unrealistic view of both the plea bargaining and sentencing

processes, a view that would only deter judges from articulating their reasons for a particular sentence fully and prevent correction when the sentencing judge relied on information which was truly unreliable, inaccurate or patently wrong. Trial judges ought not be reprimanded for acknowledging on the record the impact of information they have gained in the plea bargaining or sentencing processes unless the use of such information confounds reason and a just result. See *United States* v. *Campbell,* supra. "Accordingly, when cases of this nature are heard on appeal, we should review the record to ensure that there is a persuasive basis for the conclusion reached by the sentencing court." *United States* v. *Campbell,* supra. There is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a case by case basis. *United States* v. *Lemon,* 723 F.2d 922, 935 (D.C. Cir. 1983). Persuasive, reliable information in the record in this case including the statement of the victim, a married woman with two children, who said there was penetration, and circumstances admitted by the defendant reasonably support the conclusion of the sentencing judge that sexual intercourse had occurred. The judge was therefore justified in considering the defendant's denial in evaluating his prospects for rehabilitation, as one consideration among many, in fashioning the sentence imposed.

The Appellate Court implicitly rejected the defendant's claim that the sentencing judge forced him to admit guilt to a crime with which he was not charged and then punished him for the assertion of his fifth amendment right against self-incrimination when he persisted in his denial of penetration. The record simply does not bear out the defendant's claim. The defendant did not assert his fifth amendment privilege but rather, while represented by counsel, voluntarily

responded to the court's inquiries. Absent circumstances not present here, the fifth amendment right not to incriminate oneself is not self-executing and a person desirous of claiming his fifth amendment privilege must assert it in a timely fashion. *Minnesota* v. *Murphy,* 465 U.S. 420, 427, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984); *Roberts* v. *United States,* 445 U.S. 552, 559, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980); *Damiano* v. *Gaughan,* 592 F. Sup. 1222, 1226 (D. Mass. 1984). Further, the sentencing judge did not attempt to force an admission; he merely gave the defendant an opportunity to present his version of the incident. Having heard it, he did not have to believe it. *United States* v. *Needles,* 472 F.2d 652, 658 (2d Cir. 1973).

We conclude that the information available to the court, that there was penetration, had an indicium of reliability and that the Appellate Court was correct in its holding that the trial court could, in its discretion, make use of it in conjunction with the defendant's denial in determining his prospects for rehabilitation. We conclude also that the defendant was not sentenced for the more serious crime of sexual assault in the first degree or punished for persisting in his denial of penetration. Rather, the sentencing judge, after observing him, simply factored the defendant's denial, as an indication of his lack of readiness for rehabilitation, into that complex formula from which he labored to derive a just sentence. See *United States* v. *Grayson,* 438 U.S. 41, 55, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978). The defendant was not deprived of due process of law.

The decision of the Appellate Court is affirmed.

In this opinion PETERS, C. J., SHEA and SANTANIELLO, Js., concurred.

ARTHUR H. HEALEY, J., concurring. While I am not, on this record, persuaded by the defendant's due pro-

cess argument basically because of the mix that goes into the determination of a condign sentence for a criminal defendant, I write separately to point out the significance of a factor considered by the trial court at sentencing that concerns me.

As the majority opinion points out, the defendant was permitted to plead guilty to a substitute information charging him with sexual assault in the third degree, in violation of General Statutes § 53a-72a (1). Penetration is not an element of the crime to which he pleaded guilty. For that matter, sexual intercourse, as defined in General Statutes § 53a-65 (2) was not an element of the crime charged in the substitute information. The sentencing judge, in his remarks prior to sentencing said that "it was very difficult for me to accept the defendant's version that there was no sexual intercourse here" and that the defendant's "unwillingness or inability to admit [it] to himself or yourself . . . undercuts in my mind a truly rehabilitative effort." The record, however, also discloses that at the time the guilty plea was taken, the state noted that while the victim would testify to penetration, it would have difficulty proving that penetration occurred because no medical tests had been performed on the victim who had taken a bath immediately after the incident. It also indicates that during the canvass, while the defendant admitted all the facts of the offense as recited, he did *not* admit that sexual intercourse had taken place.

I have no question that the information that a sentencing judge can consider in imposing sentence is broad in scope; see, e.g., *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *State* v. *Chuchelow,* 128 Conn. 323, 324, 22 A.2d 780 (1941); and need not satisfy traditional evidentiary requirements. See, e.g., *Williams* v. *Illinois,* 399 U.S. 235, 243, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970); *Commonwealth* v. *Celeste,* 358 Mass. 307, 309–10, 264 N.E.2d

683 (1970). In a word, I agree that "the sentencing judge is entitled to all the help he can get." *United States* v. *Majors,* 490 F.2d 1321, 1322 (10th Cir. 1974). A general principle concerning judicial discretion in sentencing matters involving confinement could be said to be that "the sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." ABA Standards Relating to Sentencing Alternatives and Procedures, Approved Draft § 2.2. It has also been generally recognized that four principles have been set out as goals of criminal punishment: deterrence, rehabilitation, retribution and isolation. See, e.g., Pugsley, "Retributivism: A Just Basis for Criminal Sentences," 7 Hofstra L. Rev. 379, 381 (1979); Perlman & Stebbins, "Implementing an Equitable Sentencing System: The Uniform Law Commissioners' Model Sentencing and Corrections Act," 65 Va. L. Rev. 1175 (1979). Rehabilitation emerges as a significant consideration in sentencing. While the "kind and limits of punishment made by the trial judge should be afforded high respect"; *People* v. *Notey,* 72 App. Div. 2d 279, 782, 423 N.Y.S.2d 947 (1980); I find it very difficult to agree that the "unwillingness or inability" of the defendant to admit to an element of a crime of which he is no longer charged[1] should "undercut [in the mind of the sentencing judge] a truly rehabilitative effort." Moreover, this element was not admitted by the defendant when he pleaded guilty to the substituted charge and the court accepted his plea to that charge. It is not the crime of sexual assault in the first degree for which the defendant must be rehabilitated but the crime to which he, in fact, pleaded guilty. One might also argue that his denial may have attenuated some-

---

[1] The state withdrew the original information and in its stead filed a substitute information charging the defendant with a crime two degrees lower in severity.

what the offered indicium of reliability of otherwise inadmissible evidence. In addition, a defendant must be given an opportunity to explain or rebut contested factual information relied on by the sentencing court. See, e.g., *United States* v. *Collins Spencer Catch the Bear,* 727 F.2d 759, 761 (8th Cir. 1984); *United States* v. *Papajohn,* 701 F.2d 760, 763 (8th Cir. 1983); *United States* v. *Ray,* 683 F.2d 1116, 1120 (7th Cir. 1982); *Farrow* v. *United States,* 580 F.2d 1339, 1360 (9th Cir. 1978). This defendant simply would not admit to a critical circumstance that was vital to the crime originally charged and withdrawn, which circumstance was not vital to the substituted crime to which he pleaded guilty and to which the court accepted his plea.

There is absolutely no question that " '[s]entencing should not be a game in which a wrong move by the judge means immunity for the prisoner.' " *State* v. *Langley,* 156 Conn. 598, 602, 244 A.2d 366, cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1968), quoting *King* v. *United States,* 98 F.2d 291, 296 (D.C. Cir. 1938). Where society through its criminal processes has decided that justice would be served by a plea to a lower charge, I submit that society is disserved by positing as negatively rehabilitative the "unwillingness or inability" of the defendant to admit to an element of a crime which society has decided not to press against him. Because I cannot fairly read the record to establish that the imposition of sentence by the trial court was based *solely* on the "unwillingness or inability" of the defendant to admit an element of an uncharged crime, I therefore concur in the result. Moreover, the sentence as imposed was within the statutory limits. See *State* v. *Williams,* 173 Conn. 545, 558, 378 A.2d 588 (1977).

I concur in the result.