STATE OF CONNECTICUT *v.* FRANCISCO L. DEJESUS
(5127)

DUPONT, C. J., HULL and DALY, Js.

Argued February 11—decision released April 28, 1987

*Joseph N. Tauber,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Bruce Hudock,* assistant state's attorneys, for the appellee (state).

DUPONT, C. J. The defendant pleaded guilty to sexual assault in the third degree in violation of General Statutes § 53a-72a, and was sentenced to a term of five years. On appeal from the judgment rendered, he claims that the trial court erred (1) by not permitting

him to cross-examine the victim at the sentencing hearing, (2) by imposing a sentence based upon unreliable information contained in the presentence investigation report, and (3) by failing to specifically perform its promise to impose a suspended sentence.

The following subordinate facts are not in dispute. The defendant was charged in a two count information with sexual assault in the first degree in violation of General Statutes § 53a-80 (a), and risk of injury to a minor in violation of General Statutes § 53-21. The defendant subsequently entered into a plea bargain with the state, in which he agreed to enter a plea of guilty to sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[1] In return, the state agreed to substitute the two count information with one count of sexual assault in the second degree, and to make no recommendation as to sentencing.

After being advised of the plea bargain at a subsequent hearing, the trial court informed the defendant that if his presentence investigation report was "good," the court would give him a suspended sentence.[2] The trial court also informed the defendant that if it decided to impose more than a suspended sentence, the defendant would be given the opportunity to withdraw his guilty plea. The defendant thereafter entered a plea

---

[1] General Statutes § 53a-71 provides in pertinent part: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] The trial court stated: "And, I indicated that based on a good presentence investigation I would give you a suspended sentence. That's based on a good presentence investigation. Do you understand that?

"Mr. DeJesus: Yes, your honor.

"The Court: But, if I decided to give you more than the suspended with probation you could withdraw your plea and go to trial. Do you understand that?

"Mr. DeJesus: Yes, your honor."

of guilty to sexual assault in the second degree. Before accepting the plea and after reviewing the statute, however, the trial court discovered that nine months of the sentence could not be suspended. The trial court therefore advised the defendant to reconsider his plea.[3]

After a short recess, the defendant and the assistant state's attorney agreed that the defendant would enter a plea of guilty to sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).[4] The defendant thereafter withdrew his previous pleas, and entered a plea of guilty to sexual assault in the third degree. The trial court accepted the defendant's guilty plea after finding that the plea was "entered knowingly [and] intelligently with full understanding of the crime charged."

---

[3] The transcript reflects the following:

"The Court: Well, sexual assault two. 'Nine months may not be suspended.' If I am reading the statute correctly, it's a class C felony, nine months of the sentence may not be suspended or reduced by the court.

"Mr. Callahan: I think your honor is correct.

"Mr. Tauber: Your honor, we had discussed this in chambers. There was another understanding. Is there a statute?

"The Court: Sexual assault three, which is a class D felony.

"Mr. Tauber: As your honor I'm sure knows, Mr. Callahan was in chambers. We were all in chambers. The understanding was that depending on the PSI and if he turned out to have a good record and so on and so forth to the presentence investigation. I represented to my client that under those circumstances that he would have a suspended sentence, a good probability of that and he would not have to serve any other time apart from what he has already served. I think it was a week or so in jail. If that's the case—

"The Court: Well, you may want to reconsider your plea.

"Mr. Callahan: It's fair to say you have two choices, Mr. Tauber. You may let your plea stand or you may withdraw.

"Mr. Tauber: Are you willing to consider the class D, C felony which is 53—

"Mr. Callahan: We're at C now.

"The Court: We're at C. It's not up to the court to charge. It is the state's attorney's unique privilege to charge. The court sentences."

[4] General Statutes § 53a-72a provides: "SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

At the sentencing hearing, the fourteen year old victim was allowed to give a statement regarding her attitude towards the defendant. The victim reaffirmed her statements previously made to a probation officer and contained in the defendant's presentence investigation report. The victim stated that after the incident, she cried in her sleep. She further disclosed that she "felt like killing [the defendant] afterwards," and that he should be "put away." The victim also stated that she would be unhappy if he did not go to jail. The trial court thereafter denied defense counsel's request to cross-examine the victim.

The trial court concluded that the presentence investigation report was unfavorable. After hearing the evidence presented at the sentencing hearing, the court informed the defendant that it would not suspend the sentence, but gave the defendant an opportunity to withdraw his guilty plea before a sentence was imposed. The defendant, however, declined to do so.[5]

I

In his first claim of error, the defendant asserts that the trial court's denial of his request to cross-examine the victim at the sentencing hearing was violative of due process under both the United States and Connecticut constitutions. The defendant claims that the vic-

---

[5] In declining to withdraw the defendant's guilty plea, defense counsel stated: "I have cooled down in the recess, your honor, to try to be able to intelligently advise my client. In view of the enormous risk that he faces if he withdraws his plea, which then subjects him to the second degree charge, which is a mandatory sentence, and which is the only charge I believe that [the] state can prove, Mr. DeJesus has stated that he will not withdraw his plea on that basis, but if your honor in his opinion sentences him to more than is considered a fair sentence then he will want to file an appeal on the basis of the grounds of the failure to cross-examine the victim, to cross-examine Mr. Callahan, and so on. And on that basis, your honor, because of the enormous risk that he faces he will not withdraw his plea. He will proceed to sentencing and if he doesn't consider the sentencing fair to file an appeal of the sentence . . . ."

tim had made previous statements prior to the hearing indicating that she did not want the defendant to go to jail. The defendant therefore alleges that he had a right to cross-examine the victim to establish that the statements she made at the sentencing hearing were inconsistent with her prior statements.[6]

After a conviction either by trial or plea of guilty, a sentencing judge must necessarily have "a wide discretion in the sources and types of evidence used to assist him in fixing the penalty within the limits prescribed by law. *Williams* v. *New York,* 337 U.S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 [1949]." *State* v. *Harmon,* 147 Conn. 125, 128, 157 A.2d 594 (1960). The sentencing court, therefore, "is not held within the narrow limits of the [evidentiary] rules observed in a criminal trial. . . . If the court were, most, if not all, of the benefit which can be had from a presentence investigation and report would be lost to the convicted offender and the state, and the legislative purpose of bringing our criminal procedure more completely in harmony with modern concepts of penology would be thwarted." Id., 128–29; see also *Williams* v. *New York,* supra, 246–47.

For these reasons, both the United States Supreme Court and our Supreme Court have recognized that a defendant is *not* entitled, under the due process clause, to cross-examine witnesses in a sentencing hearing. *Williams* v. *New York,* supra, 250; *State* v. *Harmon,* supra, 129. Rather, the extent to which a defendant may challenge the statements contained in a presentence investigation report must, of necessity, rest in the sound discretion of the sentencing judge. *State* v.

---

[6] The defendant also claims on appeal that he had a right to cross-examine one of the assistant state's attorneys in order to establish that the victim had originally not wanted to press charges. The record reflects, however, that the assistant state's attorney was never called as a witness at the sentencing hearing, and was thus never subject to cross-examination.

*Harmon,* supra. Where the cross-examination of a witness regarding statements in the report "would have been tantamount to inviting a lengthy excursion into collateral issues"; id., 129; it is not an abuse of discretion for the trial court to refuse the defendant's motion to permit cross-examination of such witness. Id. Nor is it a denial of due process for the sentencing court to rely on information supplied by a witness whom the accused is not permitted to cross-examine. *Williams* v. *New York,* supra, 251–52.

The defendant claims that the precedent established by *Williams* v. *New York,* supra, and *State* v. *Harmon,* supra, has been severely modified by the holding in *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). In *Gardner,* the United States Supreme Court held that in capital cases, a defendant is denied due process of law when the death sentence is imposed on the basis of confidential information contained in a presentence investigation report which is not disclosed to defense counsel. The defendant asserts that *Gardner* has conclusively established that the sentencing process must comport with the requirements of the due process clause, thereby necessitating that he be permitted to cross-examine witnesses at the sentencing hearing.[7]

The defendant's argument, however, is flawed. The sentencing procedure has never been held to be immune from scrutiny under the due process clause. *Williams* v. *New York,* supra, 252 n.18. Merely because the due process clause is clearly implicated at sentencing, how-

---

[7] In reaching its conclusion that a defendant is denied due process of law when the presentence investigation report is not disclosed to defense counsel and the death sentence is subsequently imposed, the United States Supreme Court noted that "it is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977).

ever; *Gardner* v. *Florida,* supra; does not necessarily imply "that all of the procedural safeguards and strict evidentiary limitations of a criminal trial proper are required." *United States* v. *Fatico,* 579 F.2d 707, 711 (2d Cir. 1978). The holding in *Gardner* did not invalidate the general proposition that a sentencing court must be able to draw on information concerning all aspects of the defendant's life, and that "[t]he type and extent of this information make totally impractical if not impossible open court testimony with cross-examination." Id., 712, citing *Williams* v. *New York,* supra, 250; see also *State* v. *Huey,* 199 Conn. 121, 127, 505 A.2d 1242 (1986). Moreover, even if *Gardner* can be interpreted as having qualified *Williams* v. *New York,* supra, "there can be no doubt that its holding is strictly limited to due process guarantees in *capital* cases." *United States* v. *Fatico,* supra, 712 n.10. Contrary to his claims, therefore, the defendant did not have a constitutional right to cross-examine the victim at his sentencing hearing.

The record further reflects that it was not an abuse of the trial court's discretion to deny the defendant's request to permit such cross-examination in the present case. The victim was a fourteen year old girl who vehemently expressed her desire to be "kept away" from defense counsel. The victim and defense counsel openly displayed hostility towards each other during the hearing.[8] Moreover, remarks made by defense counsel to

---

[8] Excerpts from the transcript reflect the following exchanges between the victim and defense counsel:

"[The Victim]: Can I say something?

"The Court: Certainly.

"Mr. Tauber: Yes. Saying something. Go ahead, if the judge permits you.

"[The Victim]: He [defense counsel] came in there and he goes, 'so you plan on testifying now.' And then he was just hollering at me.

"Mr. Tauber: Oh, I wasn't hollering.

"[The Victim]: Yes, you were.

"Mr. Tauber: I was asking you questions.

the court indicated that he wanted to pursue collateral and irrelevant issues on cross-examination.[9] To have permitted cross-examination of the victim under these circumstances would have resulted in an illimitable pur-

"[The Victim]: And then but the first time I ever talked to him he denied to me that he was his lawyer. He was trying to get everything out of me.

"Mr. Tauber: That's a lie.

"[The Victim]: That is not a lie.

"Mr. Tauber: I will bring my paralegal here. She will come in and testify.

"[The Victim]: There was no one in there except me and you.

"Mr. Tauber: There were two separate times you were in my office.

"The Court: Please tell us what occurred.

"Mr. Tauber: Tell us what occurred.

"[The Victim]: And then he was trying to push me into dropping the charges on this guy.

"The Court: And that's what you don't want to do.

"[The Victim]: That's what I don't want to do. And that's what made me say yes I did. But now, I don't. . . .

"The Court: Is there anything else that you wish to tell the court?

"[The Victim]: Yes. Could you please try and get this man away from me. Cause any time, I mean, it's just that any time he looks at me he's just hollering. And I'm not lying.

"Mr. Tauber: You're not? . . .

"The Court: Yes. What else do you wish to say?

"[The Victim]: I don't want my mother to stay here with that guy.

"Mr. Tauber: Maybe she's going to run the court here.

"The Court: She's not running the court, Mr. Tauber. She's fourteen years of age.

"Mr. Tauber: She's more experienced than women of thirty and ten of them put together, your honor.

"Mr. Hudock: That was very kind, too, Mr. Tauber."

[9] Defense counsel, in his request to cross-examine the victim, stated to the court:

"Mr. Tauber: And the statements —somebody has gotten to this victim to change her—

"The Court: Who?

"Mr. Tauber: I don't know. I cannot examine the victim. That is the problem, your honor. It has come to me through the grapevine of the community that pressure has been applied to this victim. She has been sent to a home. She has been threatened with drug prosecutions. She is a drug addict of some kind. And, all this done and my client winds up as the victim in a sense himself, when he has done—he has a favorable report here, your honor. And, this woman, if she wanted to press the charges, why would

suit of trivial and inappropriate collateral issues.[10] Furthermore, defense counsel established the fact that the victim had manifested a change of attitude through the introduction of testimony from two other witnesses.[11] We find, therefore, that it was not an abuse of discretion for the court to deny the defendant's request to cross-examine the victim.

## II

In his second claim of error, the defendant challenges the reliability of the information contained in the presentence investigation report upon which the trial court relied in imposing a sentence on the defendant. The defendant alleges that the probation officer, in preparing the presentence investigation report, invalidated

she go to Mr. Callahan and ask that they not be pressed and this man not go to jail. There were seven continuances in this case, your honor. It took that long to get this victim to come and say that she wants to change her mind? Something's amiss here, your honor. I mean something is rotten in the state of Connecticut, if I may paraphrase Shakespeare.''

The record thus reflects that defense counsel wanted to cross-examine the victim in order to raise issues that were extraneous and collateral to the determination of an appropriate sentence for the defendant.

[10] The record reflects an additional factor that was considered by the trial court in reaching its decision to deny defense counsel's request to cross-examine the witness. The trial court noted that General Statutes § 54-91c (b) provides that prior to the imposition of a sentence, "the court shall permit the victim of the crime to appear before the court for the purpose of making a statement for the record. In lieu of such appearance, the victim may submit a written statement to the state's attorney . . . . Such state's attorney . . . shall file the statement with the sentencing court and the statement shall be made a part of the record at the sentencing hearing." In the present case, the trial court could have accepted and considered a *written* statement from the victim, thus making it impossible for the defendant to cross-examine her.

The court therefore informed defense counsel that "[n]othing in [the statute] states that you have the right to cross-examine the victim. I have made the victim's statement a part of the sentencing procedure."

[11] At the sentencing hearing, defense counsel called the defendant's employer and the defendant's girlfriend to the stand. Both witnesses testified that the victim had indicated that she did not want to press charges against the defendant, and that she did not want the defendant to suffer.

such report because of his "distinct aura of total unreliability due to the view of his job which he claimed was not to get at the truth but only to accurately transcribe what was told him." Moreover, the defendant claims that such report was unreliable because the probation officer used the victim's twelve year old brother as an interpreter while interviewing the victim's mother. The defendant asserts that because the probation officer did not speak Spanish, he could not have known if the twelve year old interpreter had translated the questions and answers correctly.[12]

Because judges must necessarily consider a wide variety of information in sentencing proceedings, the trial court need not be restricted to the consideration of such information which meets the same high procedural standard as evidence presented at trial. Rather, the court may consider any responsible unsworn information "relative to the circumstances of the crime and to the convicted person's life and circumstance." *State* v. *Huey*, supra, 127; see *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). "It is a fundamental sentencing principle that a sentencing judge may 'appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come.' *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)." *State* v. *Huey*, supra. As a matter of due process, however, information may be properly considered as a basis for a sentence only if it has some *minimal indicium of reliability*. Id.; see also *State* v. *Collette*, 199 Conn. 308, 320, 507 A.2d 99 (1986).

---

[12] The defendant also alleges that the information contained in the report regarding the victim's statements was unreliable because the victim was not subjected to cross-examination at the sentencing hearing. As we have previously noted, however, the defendant had no constitutional right to cross-examine the victim and it was furthermore not an abuse of discretion for the trial court to deny a request to cross-examine her.

Our role on appellate review of the trial court's exercise of its wide discretion is limited. "As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey,* supra. We find that the record reflects that there was a persuasive and reliable basis for the trial court to rely on the information presented in the presentence investigation report, and that such information had the minimal indicium of reliability required.

At the sentencing hearing, defense counsel thoroughly examined the probation officer who prepared the report. The probation officer was asked if he, in interviewing the victim, inquired as to whether at one point she did not want the defendant to go to jail. The probation officer informed defense counsel that it was his role to only accurately record the victim's statements regarding her attitude and injuries. The defendant claims that the probation officer's proper role was to "get at the truth" in order to provide the sentencing court with as many facts as possible "so that the court could make an intelligent decision." The defendant thus alleges that the probation officer's failure to solicit and obtain such information rendered his presentence investigation report unreliable.

General Statutes § 54-91a (c) clearly sets forth the information that a probation officer is required to obtain in preparing a presentence investigation report. That statute provides that in preparing such a report, "the probation officer shall promptly inquire into the circumstances of the offense, the attitude of the complainant or victim, or of the immediate family where possible . . . and the criminal record, social history and present condition of the defendant. Such investigation shall include an inquiry into any damages suffered by the victim, including medical expenses, loss

of earnings and property loss." In preparing such report, the probation officer is required "to reflect the feelings and attitudes of the victim as accurately as possible." Connecticut Probation Officer's Manual § 403.01, Sec. 15.[13] Contrary to the defendant's claims, it was not the role of the probation officer to ascertain the truth of the victim's statements, or to question the victim unnecessarily as to matters outside the scope of the statute.

Moreover, there is no duty imposed on the probation officer to ascertain whether an interpreter has accurately translated the questions and answers. Such a requirement would unnecessarily burden and impede the probation officer in the performance of his duties. The record in the present case reflects that the information obtained from the interview with the victim's mother, in which the victim's brother acted as an interpreter, was confirmed by the probation officer in subsequent interviews. We find, therefore, that the information contained in the presentence report had, at the very least, a minimal indicium of reliability, and that the trial court did not err in considering such information.

### III

In his final claim of error, the defendant claims that the trial court erred in not fulfilling its promise to impose a suspended sentence. He asserts that because the presentence investigation report was favorable

---

[13] Connecticut Probation Officer's Manual § 403.01, Sec. 15 provides in pertinent part: "Victim's Attitude. The victim's attitude section of the report should not present a third version of the offense. The officer should attempt to reflect the feelings and attitudes of the victim as accurately as possible. Department policy requires in cases in which personal injury was involved or in cases involving sexual attack, information regarding not only the immediate impact of the crime, but also when medical opinion is available, information regarding any longlasting physical or psychological damage should be reported . . . ."

except for the comments made by the victim, due process mandates a specific performance of the promise by the trial court.

The defendant's argument is premised upon the erroneous assumption that a trial judge is under a duty to perform a promise made to the defendant regarding the sentence he would impose. He relies upon the holding in *Santobello* v. *New York,* 404 U.S. 257, 260, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), as a basis for his claim. Such reliance is misplaced. In *Santobello,* the United States Supreme Court held that a promise or agreement made by a *prosecutor,* upon which the defendant relied in entering his plea of guilty, must be fulfilled. The same rule, however, does *not* apply to a trial judge. A trial judge, unlike a prosecutor, may not participate in plea agreements. *State* v. *Gradzik,* 193 Conn. 35, 47, 475 A.2d 269 (1984). Furthermore, the record in the present case indicates that the sentencing judge's promise to suspend the defendant's sentence if the presentence investigation report was favorable was not made as part of a plea agreement, and therefore was not part of the inducement or consideration relied upon by the defendant in entering his guilty plea.

The role of a trial judge at sentencing is such that public policy considerations bear against the specific performance of any promise regarding sentencing made by a judge. Modern precepts of penology require that the discretion of a sentencing judge to impose a just and appropriate sentence remain unfettered throughout the sentencing proceedings. Where a presentence investigation report is statutorily mandated, a judge cannot make any promise or determination of the sentence he will impose before he has reviewed the report. General Statutes § 54-91a (a); *State* v. *Schaeffer,*

5 Conn. App. 378, 387, 498 A.2d 134 (1985);[14] see also *People* v. *Dulin,* 122 Mich. App. 382, 332 N.W.2d 492 (1983); *People* v. *Bonilla,* 87 App. Div. 2d 746, 448 N.Y.S.2d 677 (1982); 66 A.L.R.3d 902, 931. Moreover, "[u]ntil sentence is pronounced, the trial court maintains power to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate." *State ex rel. Wilhoit* v. *Wells,* 356 So. 2d 817, 824 (Fla. App. 1978). In those circumstances in which the judge cannot in conscience impose the sentence conditionally promised, it has been uniformly recognized that the only obligation he has is to grant the defendant the opportunity to withdraw his guilty plea. *State ex rel. Wilhoit* v. *Wells,* supra; *People* v. *Dulin,* supra; *People* v. *Patrick,* 113 Mich. App. 105, 107, 317 N.W.2d 306 (1982); *People* v. *Bonilla,* supra. In the present case, the trial judge gave the defendant the opportunity to withdraw his plea, and the defendant elected not to avail himself of such opportunity.

Even if we were to assume that the trial judge was under a duty to perform such a promise, we note that, in the present case, the sentencing judge did not breach his promise to the defendant. After reviewing the presentence investigation report, the judge determined that such report was unfavorable. The record reflects that the information contained in the report which was construed as unfavorable by the trial judge included

[14] General Statutes § 54-91a (a) provides in relevant part: "No defendant, convicted of a crime. . . the punishment for which may include imprisonment for more than one year, may be sentenced, or his case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if (1) the defendant is so convicted for the first time in this state . . . ." The defendant in this case had no prior record.

the victim's attitude, statements by her family, and the fact that the defendant showed no remorse for his crime. Moreover, incarceration was specifically recommended by the probation officer in his report. As part of his promise, the judge assured the defendant that in the event that he determined that the report was unfavorable and decided to impose a sentence greater than a suspended sentence, he would give the defendant an opportunity to withdraw his plea. The record reflects, therefore, that the court fulfilled entirely its promise to the defendant.

There is no error.

In this opinion the other judges concurred.