# STATE OF CONNECTICUT *v.* ANTONIO PENA
## (SC 18717)

Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh, Harper and
Vertefeuille, Js.

Argued April 28—officially released July 19, 2011

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Isabel B. Bussarakum*, law student intern, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Thomas R. Garcia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Antonio Pena, was convicted after a jury trial of the crimes of carrying a pistol without a permit in violation of General Statutes § 29-35 and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), and was found not guilty of murder, either as a principal or an accessory, in violation of General Statutes §§ 53a-54a and 53a-8. The defendant appeals[1] from the judgment of conviction claiming that the trial court improperly: (1) admitted testimony that the defendant previously had possessed a pistol on an occasion prior to the date of the crimes with which he was charged; and (2) considered, in sen-

___

[1] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tencing the defendant, remarks made by the family of the victim, Gregory Cuyler, in their impact statements, and other evidence related to the murder charge, of which the defendant was found not guilty. We reject these claims and, accordingly, we affirm the judgment of the trial court.

The following procedural history and facts, which the jury reasonably could have found, are relevant to our resolution of the defendant's claims. In the early morning hours of April 10, 2005, the defendant and the victim were at the Main & Tower Café, which was a nightclub in Hartford. Eyewitness testimony revealed the following: Between approximately 1 a.m. and 1:30 a.m., a verbal dispute ensued between the defendant and the victim, which lasted approximately fifteen minutes. During the dispute, the victim displayed what appeared to be a nine millimeter semiautomatic pistol, keeping it pointed at the floor.

At some point thereafter, the defendant and the victim continued their dispute outside on the sidewalk in front of the nightclub. The dispute then escalated and the victim punched the defendant. The defendant and the victim then brandished firearms. The defendant's black gun looked similar to the victim's nine millimeter semiautomatic pistol. As the dispute continued, the defendant and the victim began to raise their guns. Thereafter, shots were fired and the victim was fatally wounded.

The defendant subsequently was charged with carrying a pistol without a permit in violation of § 29-35, criminal possession of a firearm in violation of § 53a-217 (a) (1), and murder, either as a principal or an accessory, in violation of §§ 53a-54a and 53a-8. The defendant's theory of defense at trial was misidentification. After a jury trial, the defendant was found guilty of carrying a pistol without a permit and criminal pos-

session of a firearm, but not guilty of murder and the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55 (a) (1). The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of ten years, structured as follows: five years incarceration, of which one year was a mandatory minimum, for carrying a pistol without a permit, and a consecutive sentence of five years, of which two years was a mandatory minimum, for criminal possession of a firearm. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court improperly admitted the testimony of Troy Cuyler, the victim's brother, that the defendant had possessed a pistol on another occasion. Specifically, the defendant asserts that the evidence was not relevant and that its prejudicial effect outweighed its probative value. In response, the state claims that the trial court properly admitted the evidence that, prior to the shooting, the defendant had possessed a pistol similar to the one used in the victim's murder. Specifically, the state claims that the evidence that the defendant possessed a black pistol in the weeks prior to the victim's death was relevant to the issue of whether the defendant had the means and opportunity to shoot the victim. The state also asserts that the probative value of the evidence outweighed its prejudicial effect because the evidence only established the narrow fact that the defendant had had access to a pistol that could have been used in the shooting, but it did not imply that the defendant previously had harmed anyone, had acted violently or oth-

erwise had demonstrated a propensity to commit crimes. We agree with the state.[2]

The following additional undisputed facts are necessary to the resolution of this issue. At trial, the state sought to introduce Cuyler's testimony regarding the defendant's possession of a pistol prior to the shooting. The trial court admitted Cuyler's testimony, over the defendant's objection, stating that the defendant could argue the weight of the state's evidence to the jury. Cuyler testified that, at some point in time within approximately three months of the victim's shooting, he and the defendant were seated together in a vehicle, and that, as police detectives approached the vehicle, the defendant took a pistol out of his waistband and hid it under his seat. Cuyler described the weapon as a "big gun" that was black in color.

At the outset, we set forth the standard of review and applicable legal principles governing the defendant's first claim. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must out-

---

[2] Because we conclude that the trial court properly admitted the evidence that the defendant previously had possessed a pistol similar to the one used in the commission of the victim's murder, we do not need to address the defendant's claim that the improper admission of this evidence was harmful.

weigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 311–12, 977 A.2d 209 (2009).

We first examine the relevance of the evidence. In the present case, the defendant claims that evidence that he had possessed an unspecified gun at some point several months prior to the shooting was too remote from the murder to be relevant. In response, the state asserts that the evidence was relevant to show that the defendant had the opportunity to obtain the weapon used in the commission of the crime. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation

marks omitted.) *State* v. *Davis*, 298 Conn. 1, 23, 1 A.3d 76 (2010).

In the present case, our review of the record persuades us that the trial court did not abuse its discretion when it determined that evidence regarding the defendant's possession of a black pistol approximately three months prior to the shooting was relevant to this case.[3] The evidence established that the victim had died from a gunshot wound, and eyewitness testimony also established that the defendant had displayed a black pistol during his dispute with the victim. Testimony that the defendant had access to and was carrying a black pistol approximately ninety days prior to the shooting supported the inference that the defendant had access to the type of weapon that was used to kill the victim. "Evidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime. . . . The state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Sivri*, 46 Conn. App. 578, 584, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997). We conclude, therefore, that the trial court did not abuse its discretion in concluding that Cuyler's testimony was relevant.

We next turn to whether the evidence was more probative than prejudicial. "Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence out-

---

[3] The defendant does not contend that the admission of this evidence was unduly prejudicial because the jury could have relied on Cuyler's testimony as the basis for the criminal possession of a firearm charge. Indeed, the defendant concedes in his brief that the state acknowledged to the jury that it was not claiming that the gun Cuyler saw was the one used in the murder.

weighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Johnson,* 289 Conn. 437, 463, 958 A.2d 713 (2008).

In the present case, Cuyler's testimony merely established that the defendant previously had possessed a pistol similar to the one used in the victim's murder. The testimony, therefore, dealt with the narrow fact that the defendant had the means and opportunity to obtain a weapon similar to that which was used to cause the victim's death. The testimony did not establish that the defendant previously had harmed or threatened any person, acted violently, or otherwise call into question the defendant's character. We cannot conclude, therefore, that Cuyler's testimony so improperly aroused the emotions of the jurors that it was a manifest abuse of discretion for the trial court to allow its admission. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Cuyler's testimony.

## II

The defendant next claims that the trial court improperly considered evidence relating to the charges of murder and manslaughter in sentencing him. Specifically, the defendant asserts that the trial court improperly considered the defendant's conduct relating to the victim's murder, even though the defendant was found not guilty of murder and the lesser included offense of manslaughter in the first degree with a firearm, and doing so deprived him of his rights to a jury trial and due process.[4] The defendant further urges this court to exercise its supervisory authority over the administration of justice, to overrule *State* v. *Huey*, 199 Conn. 121, 505 A.2d 1242 (1986), and to prohibit trial courts from considering, at sentencing, conduct of which the defendant has been acquitted. In response, the state claims that the trial court did not abuse its discretion in considering evidence related to the manslaughter and murder charges in sentencing the defendant. Specifically, the state asserts that the present case is controlled by *State* v. *Huey*, supra, 127, and that the evidence considered by the trial court in the present case was properly within the scope of its review. The state further claims that this court should not overrule *Huey* or exercise its supervisory authority in the present case because the sentencing proceedings did not violate the state constitution. Because we decline the invitation to overrule *Huey* and its progeny, and agree with the state that the present case is controlled by that case, we affirm the judgment of the trial court.

---

[4] The defendant also claims that the trial court improperly relied on statements by the victim's family regarding the victim's murder. In response, the state claims that the trial court did not rely on those statements in sentencing the defendant. We agree with the state. A review of the record of the sentencing in the present case reveals that the trial court did not reference or rely on the statements by the victim's family in sentencing the defendant, but instead relied on the defendant's conduct, his criminal history and, particularly, his recidivism related to crimes involving weapons.

The following additional facts are necessary for the resolution of this claim. At the defendant's sentencing hearing, the state discussed the defendant's criminal record, which was set forth in the presentence investigation report. The defendant's criminal record included prior convictions of: carrying a weapon without a permit; possession of narcotics; assault; and witness tampering. Indeed, the defendant was on probation for assault and witness tampering at the time of the shooting in the present case. On the basis of the defendant's criminal record and his poor employment history, the state asked the trial court to sentence the defendant to the maximum ten year period of incarceration to which he was exposed.

Thereafter, members of the victim's family spoke. Laurie Jackson, who identified herself as a relative of the victim, read a statement from the victim's mother. In that statement, the victim's mother asked that the defendant "be punished for killing [her] son and all the crimes he has committed and will commit after." The victim's mother also spoke briefly. She accused the defendant of killing her son and then became overcome with emotion, at which point the trial court asked her to step out of the courtroom to compose herself.

Counsel for the defendant also made a presentation. After noting that the request made by the victim's family was understandable, he asked the trial court to focus on the charges of which the defendant was found guilty. Counsel for the defendant then asked the court to consider the defendant's involvement with his son and his girlfriend's two sons. Specifically, the defendant's attorney claimed that the defendant had been involved with and "[been] there" for his son and his girlfriend's children. The state then countered that the defendant's flight to Virginia and absence for more than one year following the shooting of the victim undermined the

claim that he was supportive of and concerned for his family.

Prior to sentencing the defendant, the trial court commented as follows: "It is correct that [the defendant] is not here today to be sentenced for a murder because he was found not guilty by the jury for that. So, the court is not going to sentence him for murder. However, the charges for which he was convicted are not in isolation. . . .

"But when you . . . are convicted of [a] serious violent crime in the past, as [the defendant] has with his record, this is the second [conviction] for carrying a pistol without a permit. In 1995 he was convicted and received five years in jail for that, which is the maximum penalty that he could have received for that. And then he was involved in an assault in the first degree that had some kind of gun involved because he was charged with carrying a pistol without a permit and illegally firing a firearm. So there was an assault, a firing of some sort upon a person, and he's convicted of carrying a pistol without a permit.

"The fact that [the defendant is] here today for a conviction of the same offense, carrying a pistol without a permit, is something that the court needs to take careful consideration of. Ordinarily, the court would not sentence . . . consecutively on two charges that really stem from basically the same offense, but, however, in this case, the fact that [the defendant] has been—this is the second conviction for carrying a pistol without a permit, the court does not find any mitigating circumstances that would warrant a reduction of the sentence or to make the sentence concurrent with the other charge. . . .

"So all of that, [the defendant's] record, his involvement in the present offense, which is a violent act, and in which the court [believes] . . . [the defendant]

possessed the firearm. In the court's mind, [the defendant] fired that gun at [the victim]. And although the jury didn't agree with that, the court believes that he did. The evidence was that he had the gun and he shot at [the victim]. He ran . . . to Virginia to escape prosecution and apprehension, an innocent man does not do that. An innocent man . . . goes to trial because he thinks he's innocent and he wants to prove he's innocent.

"So, for all of those reasons, as the court said, this case will be a deviation [from its usual practice in sentencing] because of the fact that the court believes that [the defendant] is deserving of a severe sentence because, as the probation officer noted, '[h]is arrest on the instant offense, however, [suggests] that prior periods of community supervision and incarceration did not serve to motivate [the defendant] to alter his lifestyle. It appears that a lengthy period of incarceration is warranted to address the violent nature of this offense.'

"[The probation officer] says that '[the defendant's] arrest on the instant offense brings into question his sincerity to avoid recidivism.' And the court agrees with that assessment."

Thereafter, the trial court sentenced the defendant to the maximum sentence on each of his convictions and imposed consecutive terms.

We first set forth the standard of review and governing legal principles. In *State* v. *Huey,* supra, 199 Conn. 126–27, this court concluded: "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. *United States* v. *Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972). Of necessity much of the information garnered by the probation officer [for use

in the presentence report] will be hearsay. . . . *United States* v. *Doyle*, 348 F.2d 715, 721 (2d Cir.), cert. denied, 382 U.S. 843, 86 S. Ct. 89, 15 L. Ed. 2d 84 (1965); General Statutes § 54-91a (c). To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt; *United States* v. *Baylin*, 696 F.2d 1030, 1039 (3d Cir. 1982); evidence of crimes for which the defendant was indicted but neither tried nor convicted; *United States* v. *Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977); evidence bearing on charges for which the defendant was acquitted; *United States* v. *Sweig*, supra, 184; and evidence of counts of an indictment which has been dismissed by the government. *United States* v. *Marines*, 535 F.2d 552, 554 (10th Cir. 1976). [A] dismissed indictment and the charge contained in it are within the kind of information which a court may properly consider in passing sentence. The plea bargain and the indictment dismissal resulting from it did not and, indeed could not, deprive the judge of the right and probably the duty of giving consideration to it. *United States* v. *Majors*, 490 F.2d 1321, 1324 (10th Cir. 1974). The trial court in imposing a sentence is not limited to a consideration of the count to which the defendant pleaded guilty. The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum. *United States* v. *Doyle*, supra [721].

"Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . *United States* v. *Robelo*, 596 F.2d 868, 870 (9th Cir. 1979). Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's

life and circumstance. *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. *United States* v. *Baylin*, [supra, 696 F.2d 1040]. As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which [the judge] uses to fashion [the] ultimate sentence, an appellate court should not interfere with [the judge's] discretion. See *United States* v. *Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982); *United States* v. *Robelo*, supra [870]." (Internal quotation marks omitted.)

In the present case, the defendant claims that the trial court improperly relied on evidence relating to the charges of murder and manslaughter, crimes of which the defendant was acquitted by the jury. In support of his position, the defendant cites to the fact that the trial court imposed the maximum sentence for each of the charges of which the defendant was convicted and that, prior to imposing the sentence, the trial court specifically mentioned evidence relating to the charges of murder and manslaughter. The defendant asserts that the trial court's reliance on this information deprived him of his state constitutional rights to due process and trial by jury. We disagree.

A review of the record in the present case demonstrates that the trial court relied on the defendant's criminal record, including the similarity of his previous convictions with the crimes he presently was being

sentenced for; the presentence investigation report, including statements made by the defendant's probation officer regarding the defendant's recidivism; evidence relating to the defendant's flight to avoid arrest after the shooting; as well as the evidence presented at trial.

Although some of the evidence that the trial court relied on in sentencing the defendant related to the manslaughter and murder charges, we cannot conclude that the trial court's reliance on this evidence was improper. As we have explained previously herein, this court specifically concluded in *State* v. *Huey*, supra, 199 Conn. 126, that a sentencing judge may rely on "evidence bearing on charges for which the defendant was acquitted . . . ." (Citation omitted.) Accordingly, we conclude that *Huey* controls the present case and we see no reason to disturb its holding.

Indeed, in *State* v. *Huey*, supra, 199 Conn. 127, this court recognized that "[i]t is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." (Citation omitted; internal quotation marks omitted.) The evidence relied on by the trial court in sentencing the defendant in the present case had the necessary minimal indicium of reliability—i.e., the presentence investigation report and sworn trial testimony. Accordingly, we conclude that the trial court did not abuse its discretion.

The defendant urges us to exercise our supervisory authority over the administration of justice to overrule *Huey* and prohibit the use of evidence related to charges of which the defendant was acquitted in sentencing

proceedings. We decline the defendant's invitation to overrule *Huey*. Therefore, although we conclude that the trial court did not abuse its discretion in the present case, we acknowledge that allowing a trial court to comment on and express disagreement with a jury verdict during the sentencing of a defendant may improperly call into question the jury's verdict. Indeed, it has been recognized that a judge's comments in disagreement with a jury verdict may undermine public confidence in the jury system. See A.B.A., Standards for Criminal Justice: Sentencing (3d Ed. 1994) standard 18-3.6, pp. 65–69. Accordingly, we suggest that our trial courts in future sentencings refrain from expressing disagreement with the jury's verdict.

The judgment is affirmed.

In this opinion the other justices concurred.