******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JULIO TORRES
(AC 38571)

Keller, Mullins and Lavery, Js.

*Argued May 18—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*James B. Streeto*, senior assistant public defender,
for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Robin D. Krawczyk*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Julio Torres, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims (1) the court improperly admitted evidence of his prior misconduct, (2) the court provided an incorrect jury instruction regarding the standard of proof beyond a reasonable doubt, (3) the prosecutor engaged in impropriety during closing and rebuttal arguments, and (4) the court erred in failing to disclose the psychiatric records of a state's witness following the court's in camera inspection of the records. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the night of October 9, 2009, the defendant, Jorge Zayas, Ricco Correa, and Jose Serrano were drinking alcohol on the porch behind the defendant's apartment in Hartford. At one point, the victim and Michael Rodriguez drove into the well lit parking lot adjacent to the defendant's apartment building. When the victim exited the car, the defendant, Zayas, Correa, and Serrano approached him, and an argument ensued. During the argument, Correa passed a gun to the defendant. After taking the gun, the defendant shot the victim once in the head at close range, killing him.[1]

Rodriguez, who was standing in the parking lot when the shooting took place, did not see who shot the victim, but heard the gunshot and immediately turned around and saw that the defendant was the only person close to the victim's body. Seeing Zayas, Correa, and Serrano standing twenty to twenty-five feet away, Rodriguez fled the scene on foot. Correa, who had taken back the gun used to shoot the victim, pursued Rodriguez while the defendant, Zayas, and Serrano stood in the parking lot yelling, "Kill him. Kill him."

The defendant's girlfriend, J.R.,[2] observed the whole incident from the doorway of the defendant's apartment. After witnessing the defendant shoot the victim, J.R. went back into the defendant's apartment and pretended to be asleep. The defendant ran into the apartment and stated to J.R., "I killed him. I killed him. Get up." The defendant told J.R. that the victim "came over there fighting for the turf and that he shot him." A few minutes later, the defendant received a phone call from Correa, who told the defendant that he had "mistakenly shot someone else thinking it was [Rodriguez], but that he was tossing the gun in the river." J.R. could not remember the type of gun the defendant used to shoot the victim.

At approximately 1:15 a.m. on October 10, 2009, police arrived at the scene of the shooting in response to a 911 call. Officers found the victim's body in the parking lot behind the apartment building, bleeding from the right side of his head. The victim was pro-

nounced dead at the scene. Susan Williams, an associate medical examiner for the state, determined that the cause of death was a single gunshot wound to the right side of the head. Williams estimated that, on the basis of soot and stippling patterns around the entrance wound, the muzzle of the gun was approximately six to ten inches from the right side of the victim's head when it was fired.

On September 4, 2013, the state charged the defendant with murder in violation of § 53a-54a. On October 4, 2013, following a jury trial, the defendant was convicted of murdering the victim. On December 6, 2013, the court sentenced the defendant to a total effective sentence of fifty years incarceration. This appeal followed. Additional facts will be set forth as necessary to our assessment of the issues on appeal.

I

The defendant first claims that the court abused its discretion by admitting evidence of his prior misconduct, namely, that he had possessed a revolver approximately three months prior to the murder, for the purpose of establishing that he had the means to shoot the victim. In support of this claim, the defendant argues that the evidence was not relevant and that its prejudicial effect outweighed its probative value. In response, the state argues that the evidence was relevant because it tended to show that the defendant had access to a weapon suitable for the commission of the murder and that this probative value outweighed the evidence's prejudicial effect. We agree with the state.

The following additional facts and procedural history are relevant to this claim. Prior to trial, the state indicated it was seeking to admit the testimony of Eduardo Colon, who had been the victim of a prior drive-by shooting allegedly perpetrated by the defendant. On September 27, 2013, the court held a hearing during which the prior misconduct evidence was discussed. The state represented that Colon would testify that on July 29, 2009, the defendant had shot him with a chrome revolver during a nonfatal drive-by shooting for which the defendant was charged with first degree assault. The state then argued that Colon's testimony was relevant "to show that [the defendant] had the means to commit th[e] crime." In support of this argument, the state contended that Colon's testimony regarding the defendant's prior access to a revolver was probative because the witnesses in the present murder had observed the defendant carrying a gun and the lab analyses of bullet fragments recovered from the victim's body suggested that the bullet was fired from a revolver.

In response, the defendant claimed that this evidence, "while potentially relevant, [was] more prejudicial than probative because of the credibility issues surrounding" the witnesses to the July 19, 2009 incident. The defen-

dant explained that "some other witness has said that they saw [the defendant] . . . the evening of the [victim's shooting] in possession of a revolver," and "to . . . try and buttress that witness with this remote event where those witnesses have credibility issues themselves" would confuse the issues and may "portray [the defendant] . . . unfairly . . . not only in possession of a weapon, but using it for violent purposes." The defendant further emphasized that there was not an established connection between the revolver previously observed in the defendant's possession and the shooting of the victim here, and that the prior incident was remote in time from the present murder.

The court ruled that the evidence was relevant, but placed limitations on its admission to alleviate the defendant's sole concern that undue prejudice could result from a detailed discussion of the prior possession. According to the court's ruling, the state could inquire only into whether Colon saw the defendant holding a revolver and could not probe into the circumstances and the assault surrounding that prior possession. Specifically, the court stated: "You don't have to mention what the event was or why they saw him [with the revolver], just that on a date there was a gun. Nothing about what the crime was. Nothing about any of that information. Just very simply, on that date. I'm going to allow that and that alone because it is probative."

At trial, and before the state called Colon as a witness, the defendant twice elicited testimony regarding the details of his prior possession of the revolver. First, through the cross-examination of Edwin Cardona, a state's witness and the defendant's parole officer, the defendant elicited testimony that Cardona had received a letter from Detective Andrew Jacobson of the Hartford Police Department that indicated that the defendant had been implicated in a nonfatal shooting that took place on July 19, 2009. The defendant again elicited evidence during his cross-examination of Jacobson that exceeded the bounds of the court's ruling limiting the admission of evidence regarding his prior possession of a revolver. Through Jacobson, the defendant brought out that he had been a suspect in the July 19, 2009 nonfatal shooting, and that the incident involved a drive-by shooting of two individuals who were selling heroin on the street.

Also at trial, the state called Iris Sterling, the victim's girlfriend, as a witness. Sterling testified that, on the night of the murder, she saw the defendant inside his apartment holding a gun and saying, "let's play Russian roulette"—an act that requires placing a single cartridge in the cylinder of a revolver. Similarly, J.R. testified that, on the night of the murder, she saw the defendant inside his apartment holding a gun, that he was "always around guns," but that he did not keep guns inside his

apartment. Additionally, the state's firearms examiner, James Stephenson, testified that the bullet fragments recovered from the victim were consistent with eight different kinds of revolvers and one kind of semiautomatic pistol.

Following this evidence, the state represented that it intended to call Colon as a witness. In response, the defendant renewed his objection to Colon's testimony. The defendant argued that Colon's testimony was not relevant because the state had not established that the murder weapon had been a revolver. Specifically, the defendant argued that none of the state's witnesses at trial provided a description of the murder weapon, and J.R. could not recall the kind of gun the defendant used to shoot the victim. Given that the state's witnesses were unable to provide a description of the murder weapon, the defendant argued, Colon's testimony was not relevant because the state had failed to establish "a sufficient linkage" between the chrome revolver Colon observed the defendant carrying on July 19, 2009, and the murder weapon. The defendant also renewed his objection on prejudice grounds.

The court overruled the defendant's objection, finding that Colon's testimony was relevant and not unduly prejudicial because the defendant already had elicited testimony regarding the prior shooting, the very testimony that he claimed would have been unduly prejudicial. On the issue of prejudice, the court stated: "The jury already knows, primarily through your cross-examination of [Jacobson] that you put out the information . . . that there was an accusation involving a gun. So I don't think it's going to be unduly prejudicial and it does—it is relevant. But the information was brought out several times to [Jacobson] that when he was— when you were attempting to challenge the letters, that your client was arrested for an assault involving a gun."

Thereafter, consistent with the court's ruling limiting Colon's testimony, Colon testified that on July 19, 2009, he saw the defendant carrying a "[c]hrome plated revolver." The court then instructed the jury as follows: "That testimony was offered by the state in an effort to establish an element of the offense. You can accept it, you cannot accept it, but it's not [to] be used for any other reason including any indication of that character or propensity to do any type of act." The defendant did not object to this limiting instruction.

On appeal, the defendant claims that the court abused its discretion in admitting Colon's testimony that he previously had possessed a revolver because the evidence is not relevant and, alternatively, is more prejudicial than probative. We disagree.

"The standard of review regarding uncharged misconduct evidence is well established. Evidence of a defendant's uncharged misconduct is inadmissible to prove

that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Franklin*, 162 Conn. App. 78, 96, 129 A.3d 770 (2015), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016).

A

In the present case, the defendant contends that Colon's testimony was not relevant because the state failed to establish that the revolver Colon previously saw the defendant possess and the murder weapon were the same gun. This specific argument is unavailing, however, because this court has already concluded that "[e]vidence indicating that an accused possessed an article with which the particular crime charged may have been accomplished is generally relevant to show that the accused had the means to commit the crime. . . . *The state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) Id.

In *Franklin*, a firearms examination determined that the gun used to kill the victim was a nine millimeter semiautomatic pistol. Id., 97. At trial, in order to establish that the defendant possessed the means to commit the crime, the state admitted the testimony of a witness that, approximately three months before the murder, she was confronted by the defendant who "point[ed] at her what 'looked like a little gun' and threatened to shoot her." Id., 95. The witness testified that she could not tell whether the gun was a semiautomatic pistol or a revolver, and that "all that she saw was the small, skinny nozzle of the gun and part of the barrel." (Internal quotation marks omitted.) Id. On appeal, the defendant claimed that the witness' testimony was not relevant to the issue of whether he possessed the means to commit the murder because her description of the

gun was not sufficiently similar to the semiautomatic pistol used to shoot the victim. Id., 97. In rejecting this claim, this court noted that the defendant's effort to establish that the evidence was not relevant was primarily based on "speculation that [the witness] only possibly could have seen a revolver, not a pistol." Id. Comparing the witness' description of the gun with the semiautomatic pistol used in the shooting, however, this court concluded that "[t]he jury reasonably could have inferred from [the witness'] testimony that she saw a handgun, and at that time, the defendant possessed a weapon suitable for the commission of the offense charged." Id., 97–98; see also *State* v. *Sivri*, 46 Conn. App. 578, 585, 700 A.2d 96 (rejecting claim that there was insufficient connection between large caliber handguns recovered from defendant's residence and murder of victim, where state presented evidence that victim lost large quantity of blood in defendant's family room and holes in victim's skull indicated she was killed by large caliber handgun), cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

Our review of the record in the present case persuades us that the court did not abuse its discretion in determining that Colon's testimony was relevant. Relevance, in this context, is satisfied by a showing that the prior weapon was "suitable for the commission" of the present crime. *State* v. *Franklin*, supra, 162 Conn. App. 97–98. Suitability is sufficient because "[t]he state does not have to connect a weapon directly to the defendant and the crime. It is necessary only that the weapon be suitable for the commission of the offense." (Emphasis omitted.) Id. Here, the evidence adduced at trial established that the revolver that Colon previously observed in the defendant's possession was suitable for the murder. At trial, Stephenson testified that, after examining the bullet fragments recovered from the victim, he determined that the bullet was consistent with eight different kinds of revolvers and only one kind of semiautomatic pistol. The absence of a spent shell casing at the scene of the shooting was also consistent with the use of a revolver. Additionally, Sterling testified that she saw the defendant inside his apartment on the night of the shooting holding a gun and saying, "let's play Russian roulette." Although this evidence does not establish a definitive connection between the revolver previously observed in the defendant's possession and the firearm used to kill the victim, the jury could infer from this evidence that three months prior to the shooting the defendant possessed and had access to the same type of firearm used in the shooting.

We further note that the fact that Correa handed the murder weapon to the defendant moments before the victim was shot does not render Colon's testimony less relevant. Although the defendant argues that the murder weapon could have been Correa's gun and not the revolver Colon saw the defendant previously possess,

that argument is unpersuasive in light of *Franklin*, which specifically rejects the need "to connect a weapon directly to the defendant and the crime." *State* v. *Franklin*, supra, 162 Conn. App. 96. Moreover, the evidence adduced at trial does not necessarily support the defendant's argument. To the contrary, J.R. testified that throughout the night of October 9, 2009, a group of individuals, including Correa, was inside the defendant's apartment and on the back porch drinking alcohol. J.R. and Sterling testified that, during that time period, they saw the defendant carrying a gun, and circumstantial evidence supported the inference that the defendant's gun was a revolver. Specifically, the defendant stated, "let's play Russian roulette," no shell casing was recovered from the scene, and the state's firearms examiner testified that the bullet fragments recovered from the victim were consistent with eight different kinds of revolvers, but only one kind of semi-automatic pistol. Although Correa ultimately passed the defendant the murder weapon, the jury reasonably could have inferred that the murder weapon was the same revolver that J.R. and Sterling saw the defendant holding earlier that night. Additionally, J.R. testified that the defendant was "always around guns," but that he did not keep guns inside his apartment. Finally, no evidence was produced at trial that excluded the revolver Colon previously observed in the defendant's possession as the firearm used to commit the murder. Accordingly, Colon's testimony was relevant to the issue of whether the defendant had the means to commit the crime. See *State* v. *Franklin*, supra, 96.

B

We next turn to whether the prior misconduct evidence was more prejudicial than probative. Here, the defendant argues that the probative value of Colon's testimony was minimal because the state failed to connect the revolver to the shooting and because it was cumulative of other evidence. The defendant further contends that the prejudicial effect of Colon's testimony, including details that the defendant had been the perpetrator in a prior shooting, outweighed the testimony's minimal probative value, and that the court's curative instruction exacerbated the prejudicial effect of the evidence. We disagree.

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]. . . . The trial court . . . must determine whether the adverse impact of the chal-

lenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 675–76, 22 A.3d 611 (2011).

Our review of the record leads us to conclude that the court did not abuse its discretion in determining that the prejudicial effect of Colon's testimony did not outweigh its probative value. We do not agree with the defendant's contention that Colon's testimony lacked probative value because the two guns were not shown conclusively to be the same, or that the testimony was entirely cumulative of other evidence. As previously noted; see part I A of this opinion; evidence that the defendant previously possessed a weapon, introduced to show that he had the means to commit the crime alleged, is relevant and probative if the prior weapon is a type that is suitable for the commission of the charged crime. See *State* v. *Franklin*, supra, 162 Conn. App. 97–98. Further, Colon's testimony was not cumulative of other trial testimony. Although J.R. testified that the defendant always was around guns, and both J.R. and Sterling testified that they saw the defendant in possession of a gun on the night of the crime, neither witness was able to specify that she saw the defendant in possession of a revolver. Thus, Colon was the only witness who provided direct evidence that, prior to the night of the crime, the defendant had access to a revolver. This was a contested issue as, during pretrial arguments, the defendant declined to stipulate that he was in possession of a revolver on the night of the murder. Viewed in conjunction with Stephenson's testimony that the bullet fragments recovered from the victim were consistent with the use of a revolver, and Sterling's testimony that, on the night of the murder, the defendant brandished a gun suitable for Russian roulette, Colon's direct testimony that the defendant previously had access to a revolver carried probative value.

Likewise, we disagree that Colon's testimony was overly prejudicial. First, we note that in the trial court the defendant's objection to the evidence on prejudice grounds was based on the danger that testimony regarding the circumstances of his prior possession of a revolver, specifically, that he shot Colon during a drive-by shooting, would be placed before the jury. The court, however, took care to limit this prejudicial effect by permitting Colon to testify only that he saw the defendant on July 19, 2009, in possession of a revolver. This

ruling, therefore, precluded the portion of Colon's testimony that would have caused undue prejudice. See *State* v. *Pena*, supra, 301 Conn. 676 ("[A]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jur[ors]." [Internal quotation marks omitted.]). Moreover, the defendant himself elicited testimony about the use of the revolver in a drive-by shooting before the state called Colon as a witness. The defendant did so knowing that the court's ruling forbade the state from presenting testimony regarding the drive-by shooting at any point during the trial. Accordingly, the defendant elicited the precise testimony he argued was unduly prejudicial without any prompting from the state and, as a result, was solely responsible for any undue prejudice that stemmed from Colon's limited testimony.[3] See *State* v. *Holley*, 160 Conn. App. 578, 631, 127 A.3d 221 ("[i]t is well settled that [a] defendant cannot rely upon the admission of evidence which he himself introduced as a basis for a reversal of his conviction" [internal quotation marks omitted]), cert. granted on other grounds, 320 Conn. 906, 127 A.3d 1000 (2015). Further, Colon's testimony that the defendant possessed a gun was not likely to evoke an emotional response from the jury in a case where the defendant was charged with murder. *State* v. *Collins*, 299 Conn. 567, 588, 10 A.3d 1005 ("[u]ncharged misconduct evidence has been held not unduly prejudicial when the evidentiary substantiation of the vicious conduct, with which the defendant was charged, far outweighed, in severity, the character of his prior misconduct" [internal quotation marks omitted]), cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

Finally, we decline to review the defendant's argument that the limiting instruction provided by the court exacerbated the prejudicial effect of Colon's testimony. Overlooking the court's instruction that the evidence is "not [to] be used for any other reason including any indication of that character or propensity to do any type of act," the defendant argues that the court's limiting instruction improperly permitted the jury to consider the evidence as "an element" of the offense and, in that capacity, as propensity evidence. The defendant, however, did not object to the limiting instruction that the court issued directly after Colon testified and did not object to the uncharged misconduct instruction that the court gave in its final instructions to the jury. See also part II of this opinion (dismissing as waived defendant's challenge to jury instruction). Accordingly, we decline to review the defendant's unpreserved argument that the court's limiting instruction exacerbated the prejudicial effect of the prior misconduct evidence;

see Practice Book § 60-5; *State* v. *William C.*, 103 Conn. App. 508, 520 n.6, 930 A.2d 753, cert. denied, 284 Conn. 928, 934 A.2d 244 (2007); and conclude that the court did not abuse its discretion in admitting the evidence.

II

The defendant next claims that the court provided an incorrect instruction to the jury regarding the state's burden of proof beyond a reasonable doubt. In response, the state argues that the defendant waived his challenge to the court's instructions under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). The defendant, however, argues that *Kitchens* does not apply to the present claim and, alternatively, requests that we overrule *Kitchens*. We agree with the state.

On October 3, 2013, prior to instructing the jury, the court held a charging conference on the record in which it stated that the parties had received a copy of the proposed jury instructions earlier that morning for review. The court then reviewed with counsel each individual page of the proposed instructions and solicited comments and objections. The defendant did not object or suggest any changes to the proposed instructions on reasonable doubt at the charging conference, and did not object to the reasonable doubt instruction when the charge was read to the jury.

In *State* v. *Kitchens*, supra, 299 Conn. 482–83, our Supreme Court concluded that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal."

Our careful review of the record in the present case indicates that the defendant waived his challenge to the reasonable doubt instructions under *Kitchens*. Here, the court provided the defendant with a copy of the proposed jury instructions, which included the instruction being challenged on appeal, as well as a meaningful opportunity to review them. The court then held a charging conference on the record where it reviewed the proposed instructions page by page and solicited the parties' comments and objections. Nevertheless, the defendant did not object to the reasonable doubt instruction. Under these circumstances, the defendant waived his instructional claim.

Our review does not end here, however, because the defendant argues that *Kitchens* is not applicable to the present case because the court did not mark as an exhibit the proposed jury instructions that were provided to the defendant for review. We disagree with this

argument. The court in *Kitchens* held that the defendant impliedly waives his or her constitutional right to challenge jury instructions on appeal "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given . . . ." Id. The record here clearly establishes that the defendant was provided with a copy of the proposed jury instructions, given a meaningful opportunity to review them, and failed to object to the instructions when the court read the same instructions to the jury. That the court did not mark the proposed instructions as a court exhibit does not alter this analysis.[4]

### III

The defendant next claims that he was denied the right to a fair trial due to prosecutorial impropriety. Specifically, the defendant argues that, during closing and rebuttal arguments, the prosecutor (1) made statements that were speculative and not based on evidence in the record, and (2) misstated the law regarding the standard of proof beyond a reasonable doubt. We conclude that none of the statements at issue was improper, and, consequently, we do not address the defendant's claim that the alleged improprieties violated his due process right to a fair trial.

As an initial matter, we note that the defendant did not object to any of the challenged statements at trial. "It is well established law . . . that a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . Our Supreme Court has explained that the defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper . . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time. . . . With this maxim in mind, we proceed with our review of the defendant's claim[s]." (Citations omitted; internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 782, 83 A.3d 1182, cert. denied, 311 Conn. 935, 88 A.3d 550 (2014).

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step process. The two steps are

separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived [the] defendant of his due process right to a fair trial. Put differently, [an impropriety is an impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Franklin*, supra, 162 Conn. App. 100. "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Internal quotation marks omitted.) *State* v. *Maner*, supra, 147 Conn. App. 783.

"When reviewing the propriety of a prosecutor's statements, we do not scrutinize each individual comment in a vacuum but, rather, review the comments complained of in the context of the entire trial. . . . Finally, when a prosecutor's potentially improper remarks are ambiguous, a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Citation omitted; internal quotation marks omitted.) *State* v. *Felix R.*, 319 Conn. 1, 9, 124 A.3d 871 (2015).

A

We first address the defendant's claim that the prosecutor improperly engaged in speculation and commented on facts not in evidence when she argued to the jury during closing argument that "[J.R.] was present at the installation [of the monitoring unit]," and that "people in that area are familiar with electronic bracelets . . . ." See footnote 1 of this opinion.

"We long have held that a prosecutor may not comment on evidence that is not a part of the record and may not comment unfairly on the evidence in the record. . . . However, the prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom . . . . Furthermore, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . While a prosecutor is not permitted to interject his own opinion generally, he must be permitted to speak to the cumulative evidence he has put forth during the course of trial. . . . Likewise, [w]e must give the jury the credit of being able to differentiate between argument on the evidence and

attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Citations omitted; internal quotation marks omitted.) *State* v. *Franklin,* supra, 162 Conn. App. 101.

We conclude that the prosecutor's comment to the jury that, "[m]aybe, [J.R.] was present at the installation," properly was based upon the evidence elicited at trial. At trial, J.R. testified that, prior to the shooting, she assisted the defendant in testing the range of his bracelet. Additionally, Matthew Kennedy, a manager from the electronic monitoring company, testified that range testing could only be conducted when the monitoring unit was initially installed. The prosecutor's comment, therefore, was a reasonable inference that reconciled both sets of testimony.

Likewise, we conclude that the prosecutor's comment that "the people in that area are familiar with the electronic bracelets," could reasonably have been inferred from evidence in the record. Kennedy testified that the monitoring unit in the defendant's residence had a range of 150 feet. The state admitted an electronic monitoring report into evidence that revealed that from October 9 through October 12, 2009, the defendant's monitoring unit had detected eight other electronic bracelets in that range. Thus, during that three day period, there were at least eight other individuals in close proximity to the defendant's residence who were subject to electronic monitoring. The jury reasonably could have inferred from this evidence that people in the defendant's area were generally familiar with electronic monitoring bracelets. Accordingly, the prosecutor's comments to the jury were not improper.

### B

We next address the defendant's claim that the prosecutor misstated the law regarding the standard for proof beyond a reasonable doubt during her closing argument. During her closing argument, the prosecutor made the following remark: "No one gave you any reason to believe that anyone other than the defendant killed [the victim]. And no one gave you a reason to believe the defendant couldn't have been the one to kill [the victim]." During rebuttal argument, the state argued: "And the last thing I want to leave you with is that reasonable doubt is not, I don't know, maybe it happened a different way. I don't know, maybe somebody else did it. I don't know, maybe we're not sure. Reasonable doubt is a real doubt . . . an honest doubt, a doubt which you can attach a reason to. *I don't believe that* [*J.R.*] *is telling the truth because. I don't believe* [*Rodriguez*] *is telling the truth because. A doubt that you can actually enunciate. A doubt that you can express, not some like oh, I don't know, maybe something else.* Not based on speculation. Not based on

conjecture. If you believe [J.R.], then [the defendant] shot and killed [the victim]. And if you believe . . . Rodriguez, then [the defendant] shot and killed [the victim]. And if you look at their testimony in light of everybody else's, and all the things that you know, and the fact that the electronic bracelet does not provide an alibi for him, then you have to find him guilty and that's what I'm asking you to do." (Emphasis added.)

On appeal, the defendant argues that the prosecutor's comments improperly suggested to the jury that reasonable doubt required the jurors to articulate a reason in order to find the defendant not guilty, which impermissibly shifted the burden to the defendant to prove his innocence. We disagree.

It is well established that "prosecutors are not permitted to misstate the law . . . and suggestions that distort the government's burden of proof are likewise improper . . . because such statements are likely to improperly mislead the jury." (Internal quotation marks omitted.) *State* v. *Herring*, 151 Conn. App. 154, 172, 94 A.3d 688, cert. granted on other grounds, 314 Conn. 914, 100 A.3d 849 (2014). However, "[w]e consistently have held that the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence, as a doubt for which a valid reason can be assigned, and as a doubt in which the serious affairs which concern you in every day life you would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire [jury] charge." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002); see also *State* v. *Ellis*, 232 Conn. 691, 705, 657 A.2d 1099 (1995) (rejecting claim that state's burden of proof was diluted on basis of jury instruction that "[a] reasonable doubt is a doubt for which a valid reason can be assigned" [internal quotation marks omitted]).

In the present case, none of the prosecutor's remarks, viewed in conjunction with the entirety of the closing and rebuttal arguments, improperly misstated the law regarding reasonable doubt. See *State* v. *Ferguson*, supra, 260 Conn. 371; *State* v. *Ellis*, supra, 232 Conn. 705. Moreover, the prosecutor did not misstate the law when she commented to the jury that, "I don't believe that [J.R.] is telling the truth because. I don't believe [Rodriguez] is telling the truth because." In view of the context in which these statements were made, it is clear that the prosecutor merely was encouraging the jury to determine the credibility of the state's witnesses on the basis of the actual evidence presented at trial rather than their own speculation. This court previously rejected a claim of prosecutorial impropriety where the comments "directed the jury to do exactly what it was supposed to do—weigh the credibility of the witness in accordance with all of the evidence put before it in

the courtroom and not engage in speculation. . . . Asking the jury to believe a witness unless there is evidence to discredit the witness is a proper request and in no way shifts the burden of [proof] from the state to the defendant." (Citation omitted.) *State* v. *Betancourt*, 106 Conn. App. 627, 641, 942 A.2d 557, cert. denied, 287 Conn. 910, 950 A.2d 1285 (2008). Because the prosecutor's comments did no more than discourage speculation, they were not improper.

IV

The defendant's final claim is that the trial court abused its discretion in failing to release all of J.R.'s psychiatric records to the defense following an in camera review of the records. We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. Prior to trial, the state subpoenaed J.R.'s mental health records from Capital Region Mental Health Center, where she had been a patient from June, 2008, to March, 2009, and Hartford Behavioral Health, where she had been a patient from August, 2011, to September, 2013. On September 27, 2013, the defendant filed a motion requesting that the court review J.R.'s mental health records in camera and turn over to the defense any material from the records that would be relevant to J.R.'s testimonial capacity. On September 27, 2013, the court held a hearing on the defendant's motion, where it determined that the defendant had made the requisite preliminary showing to support an in camera review of the records. The court then reviewed the records in camera. On September 30, 2013, after reviewing the records, the court stated on the record that "[it had] go[ne] over [J.R.'s] files from both Hartford Behavioral Health and the Capital Region, and gave to [defense] counsel anything that was relevant concerning credibility, ability to testify, anything in that regard, and that would be needed for trial."

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused." (Internal quotation marks omitted.) *State* v. *Slimskey*, 257 Conn. 842, 855–56, 779 A.2d 723 (2001). On appeal, the appellate tribunal reviews the

confidential records to determine whether the trial court abused its discretion in concluding that no information contained therein is "especially probative of the victim's ability to know and correctly relate the truth so as to justify breaching their confidentiality in disclosing them to the defendant." *State* v. *Storlazzi*, 191 Conn. 453, 460, 464 A.2d 829 (1983). "We are mindful that the restriction of a defendant's access to a witness' confidential records implicates the defendant's constitutional right to impeach and discredit state witnesses." (Internal quotation marks omitted.) *State* v. *Francis*, 267 Conn. 162, 172, 836 A.2d 1191 (2003).

Our independent review of J.R.'s mental health records, viewed in conjunction with the entire trial transcript, confirms the court's conclusion that the material contained therein that was not disclosed by the court is not relevant to J.R.'s credibility or capacity as a witness. Accordingly, we conclude that the court properly exercised its discretion by refusing to disclose certain portions of the records to the defense.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was on parole at the time of the shooting and was required to wear an ankle bracelet to ensure that he complied with a 9 p.m. to 5 a.m. curfew. There was a monitoring unit inside the defendant's apartment that would indicate to the monitoring agency if the defendant exceeded a range of approximately 150 feet. Police determined that the victim's body was located approximately 125 feet from the monitoring unit.

[2] We refer to this witness by her initials because we discuss her privileged psychiatric records. See *State* v. *Santos*, 318 Conn. 412, 415 n.2, 121 A.3d 697 (2015).

[3] We further reject the defendant's claim that the court's pretrial ruling to admit Colon's testimony *compelled* him to cross-examine Jacobson and Cardona about the defendant's use of the revolver in a nonfatal shooting. In its pretrial ruling, the court explicitly stated, and then reiterated upon the defendant's request for clarification, that Colon could not testify as to the use of the revolver in the drive-by shooting or that the incident resulted in criminal charges against the defendant. The defendant thus made an unprompted strategic decision to elicit the potentially inflammatory evidence from Jacobson and Cardona in order to impeach their credibility and to prevent the jury from speculating about the details of the July 19, 2009 incident. That this tactic proved ineffective does not provide the defendant with grounds to overturn his conviction on appeal. See *State* v. *Gibson*, 270 Conn. 55, 67, 850 A.2d 1040 (2004) ("[t]o allow [a] defendant to seek reversal [after] . . . his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal" [internal quotation marks omitted]); see also *State* v. *Clark*, 48 Conn. App. 812, 820 n.6, 713 A.2d 834 ("[a]n appellant cannot create a reviewable claim because his appellate counsel disagrees with the strategy of his trial counsel"), cert. denied, 245 Conn. 921, 717 A.2d 238 (1998).

[4] We also are unable to accept the defendant's invitation to overrule *Kitchens*. "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Billie*, 123 Conn. App. 690, 706, 2 A.3d 1034 (2010).