******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JULIO TORRES *v.* COMMISSIONER
OF CORRECTION
(AC 43902)

Alvord, Cradle and Bear, Js.

*Syllabus*

The petitioner, who had been convicted of the murder of the victim, sought a writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance by permitting certain prejudicial prior misconduct evidence to be admitted at trial. The state had indicated that it would seek to introduce testimony from E, who had been the victim of a prior drive-by shooting allegedly perpetrated by the petitioner, on the ground that E's testimony was relevant to prove that the petitioner had the means to commit the murder of the victim. The trial court ruled that E's testimony was relevant but limited the state's inquiry to whether E had seen the petitioner holding a revolver. Prior to E's testimony, the petitioner's counsel cross-examined two other state's witnesses, C, the petitioner's parole officer, and J, a police detective. C testified that he had been asked by J to violate the petitioner's parole on the basis of allegations that J never substantiated, one of which involved the drive-by shooting. J testified that he was never able to substantiate many of those allegations. The state then called E, who testified that, on the day of the drive-by shooting, he saw the petitioner carrying a revolver. The habeas court rejected the petitioner's claim that his counsel's cross-examination of C and J opened the door to the admission of evidence that the petitioner had been in possession of a weapon. The habeas court reasoned that evidence that the petitioner was in possession of the weapon was not admitted because of his counsel's cross-examination of C and J but because it was probative of the petitioner's means to commit the murder. The habeas court further reasoned that it was not objectively unreasonable for the petitioner's counsel to attempt to discredit J's testimony with evidence of the unsubstantiated allegations because counsel knew that E was going to testify about the weapon and that E's testimony would be in the back of the jurors' minds. The habeas court thus concluded that the petitioner failed to establish that his trial counsel rendered deficient performance or that he was prejudiced thereby. The court denied the petition for a writ of habeas corpus and denied the petitioner certification to appeal, and the petitioner appealed to this court. *Held* that the petitioner failed to demonstrate that the habeas court's denial of his petition for certification to appeal constituted an abuse of discretion, as he failed to demonstrate that the issues raised in his petition for certification to appeal were debatable among jurists of reason, that a court could resolve them in a different manner or that they were adequate to deserve encouragement to proceed further; it could not reasonably be disputed that the inquiry of C and J by the petitioner's counsel, viewed with an eye toward emphasizing J's history of lodging unsubstantiated allegations of wrongdoing against the petitioner, could have inured to the favor of the petitioner, and, thus, that a trial strategy aimed at undermining the veracity or accuracy of the state's witnesses, although ultimately unsuccessful, was not sound or constituted ineffective assistance of counsel.

Argued October 13—officially released November 23, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Deren Manasevit*, assigned counsel, for the appellant

(petitioner).

   *Jonathan M. Sousa*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Leah Hawley*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Julio Torres, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification on the ground that he failed to demonstrate that he had been denied the effective assistance of counsel in his underlying criminal trial. We disagree and, accordingly, dismiss the appeal.

The following facts were set forth by this court in the petitioner's direct appeal from his conviction. "On the night of October 9, 2009, the [petitioner], Jorge Zayas, Ricco Correa, and Jose Serrano were drinking alcohol on the porch behind the [petitioner's] apartment in Hartford. At one point, the victim and Michael Rodriguez drove into the well lit parking lot adjacent to the [petitioner's] apartment building. When the victim exited the car, the [petitioner], Zayas, Correa, and Serrano approached him, and an argument ensued. During the argument, Correa passed a gun to the [petitioner]. After taking the gun, the [petitioner] shot the victim once in the head at close range, killing him.[1]

"Rodriguez, who was standing in the parking lot when the shooting took place, did not see who shot the victim, but heard the gunshot and immediately turned around and saw that the [petitioner] was the only person close to the victim's body. Seeing Zayas, Correa, and Serrano standing twenty to twenty-five feet away, Rodriguez fled the scene on foot. Correa, who had taken back the gun used to shoot the victim, pursued Rodriguez while the [petitioner], Zayas, and Serrano stood in the parking lot yelling, '[k]ill him. Kill him.'

"The [petitioner's] girlfriend . . . observed the whole incident from the doorway of the [petitioner's] apartment. After witnessing the [petitioner] shoot the victim, [she] went back into the [petitioner's] apartment and pretended to be asleep. The [petitioner] ran into the apartment and stated to [her], 'I killed him. I killed him. Get up.' The [petitioner] told [her] that the victim 'came over there fighting for the turf and that he shot him.' A few minutes later, the [petitioner] received a phone call from Correa, who told the [petitioner] that he had 'mistakenly shot someone else thinking it was [Rodriguez], but that he was tossing the gun in the river.' [The petitioner's girlfriend] could not remember the type of gun the [petitioner] used to shoot the victim.

"At approximately 1:15 a.m. on October 10, 2009, police arrived at the scene of the shooting in response to a 911 call. Officers found the victim in the parking lot behind the apartment building, bleeding from the right side of his head. The victim was pronounced dead at the scene. Susan Williams, an associate medical

examiner for the state, determined that the cause of death was a single gunshot wound to the right side of the head. Williams estimated that, on the basis of soot and stippling patterns around the entrance wound, the muzzle of the gun was approximately six to ten inches from the right side of the victim's head when it was fired." (Footnote in original; footnote omitted; internal quotation marks omitted.) *State* v. *Torres*, 168 Conn. App. 611, 613–15, 148 A.3d 238 (2016), cert. granted in part and remanded, 325 Conn. 919, 163 A.3d 618 (2017).

In 2013, the petitioner was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a and thereafter sentenced to a total effective term of fifty years of incarceration. Id., 615. This court affirmed the petitioner's conviction. See id., 637.

On April 16, 2015, the petitioner filed this action for a writ of habeas corpus. By way of an amended petition dated August 1, 2018, the petitioner claimed that his trial counsel, Bruce Lorenzen, provided ineffective assistance by, inter alia, allowing certain prior misconduct evidence to be admitted into evidence.[2] Specifically, the petitioner alleged that Lorenzen was ineffective in that he "opened the door" to the admission of evidence pertaining to an incident that occurred three months prior to the incident in this case in which he allegedly shot an individual with a .38 revolver, the type of weapon that may have been used in this case.

The transcripts from the petitioner's criminal trial, which were admitted into evidence at the habeas trial, reveal that the admission of the prior misconduct evidence was a contested issue in the criminal trial and in the petitioner's direct appeal. Prior to the commencement of the petitioner's criminal trial, the state indicated that it would seek to introduce the testimony of Eduardo Colon, who had been the victim of a prior drive-by shooting allegedly perpetrated by the petitioner.[3] The state proffered that Colon would testify that, on July 19, 2009, the petitioner had shot him with a chrome revolver during a nonfatal drive-by shooting for which the petitioner was charged with assault in the first degree. The state argued that Colon's testimony was relevant to prove that the petitioner had the means to commit the murder of the victim.

On behalf of the petitioner, Lorenzen argued that this evidence was more prejudicial than probative. Lorenzen further contended that there was not an established connection between the revolver previously observed in the petitioner's possession and the shooting of the victim here. He also asserted that the prior incident was remote in time from the present murder.

The court ruled that Colon's testimony was relevant but limited the state's inquiry to whether Colon saw the petitioner holding a revolver. To alleviate the petitioner's concern that undue prejudice could result from

a detailed discussion of that prior possession of the weapon, the court prohibited the state from probing into the circumstances and the assault allegations surrounding that prior possession.

Before the state called Colon as a witness at trial, it called Edwin Cardona, the petitioner's parole officer, and Detective Andrew Jacobson of the Hartford Police Department to testify. Through his cross-examination of Cardona, Lorenzen elicited testimony that Jacobson previously had asked Cardona to violate the petitioner's parole on the basis of allegations that Jacobson never substantiated. One such instance involved the July, 2009 incident. When Lorenzen cross-examined Jacobson, he inquired about several unproven allegations made by Jacobson in multiple letters Jacobson had addressed to the parole board seeking to have the petitioner's parole violated. Lorenzen asked Jacobson about allegations that he made pertaining to the petitioner's involvement in the July, 2009 incident, an allegation that the petitioner killed the victim after a physical altercation arising from a drug dispute, and an allegation that the petitioner was observed with a firearm the day following that murder. Jacobson acknowledged that he was never able to substantiate many of those allegations. Thereafter, consistent with the court's previous ruling, Colon testified that, on July 19, 2009, he saw the petitioner carrying a chrome plated revolver.

At the habeas trial, the petitioner argued that Lorenzen was ineffective in that he "opened the door" to the admission of prejudicial misconduct evidence when he cross-examined Cardona and Jacobson regarding the 2009 incident involving Colon. When asked about his cross-examination of Jacobson, Lorenzen testified that, "at some point, we—[the] defense essentially abandoned whatever harbor [the court created] for us." Lorenzen explained: "[T]he best way I could describe it is that it had gotten to the point that it was—the issue was lurking and it was better to meet it head on rather than to try and continue to stay within whatever the boundaries [the court] had set." When questioned why he asked the state's witnesses about the July, 2009 shooting, Lorenzen reiterated: "[T]he most basic reason was, it had come out in a way that I felt it was better to deal with it in the open rather than to leave the jury to, perhaps, speculate on what had happened." Lorenzen acknowledged that he "could have relied on a curative instruction rather than bring this information out [him]self," but he did not rely on a curative instruction because "juries don't always follow instruction[s]." Lorenzen testified that his cross-examination of the lead detective in the petitioner's case was a strategic decision.

The habeas court rejected the petitioner's argument that Lorenzen "opened the door" to the admission of prejudicial misconduct evidence. The court ruled that

evidence that the petitioner was in possession of a .38 caliber weapon in July, 2009, was not admitted because of Lorenzen's cross-examination of Cardona and Jacobson but because it was probative of the petitioner's means to commit the crime of murder. The court explained: "Since the trial court admitted the evidence on an independent legal theory offered by the state, the petitioner has failed to establish that it would not have been admissible *but for* counsel's cross-examination questions. . . . As such, he has failed to establish either deficient performance or prejudice and the [ineffective assistance] claim fails." (Citation omitted; emphasis in original.) The court denied his petition for certification to appeal and this appeal followed.

The petitioner thereafter sought multiple articulations of the habeas court's decision. The petitioner first sought to have the trial court articulate certain findings related to Lorenzen's cross-examination, including whether it was "objectively reasonable . . . for Lorenzen to elicit misconduct evidence beyond [that allowed by] the trial court's ruling limiting the misconduct evidence to . . . testimony that [the] petitioner [was previously] in possession of a revolver." The habeas court denied the motion, finding that all but one request for articulation went to the performance prong of *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which the court had not reached, and that the final request was "inappropriate for a motion for articulation." On September 3, 2020, the petitioner filed with this court a motion for review of the habeas court's decision. This court granted the motion and ordered the habeas court "to articulate whether it considered [certain allegations in the petition] and, if so, to articulate its findings and conclusions under both the performance and prejudice prongs of *Strickland*."

On October 26, 2020, the habeas court issued an articulation in response to this court's order. The habeas court articulated that it had addressed the allegations that were subject to this court's order and referenced the specific pages of its memorandum of decision at which it did so. The court further explained: "While not specifically clear from this court's memorandum of decision in retrospect, the trial court's decision to allow testimony from witnesses on the prior misconduct came *before* . . . Lorenzen cross-examined the witnesses in question. The witnesses in question were allowed to testify only after the trial court had ruled in the state's favor after hearing argument from both sides. In other words, the trial court admitted the evidence *because* it accepted the legal theory of relevance offered by the state, not *because* . . . Lorenzen did, or failed to do, anything during his subsequent cross-examination. Since the evidence was not admitted *because of* what . . . Lorenzen did on cross-examination, as asserted by the petitioner, the petitioner failed to prove [that]

his performance was deficient. For the same reason—that the trial court had ruled beforehand that the evidence in question was admissible on the legal basis offered by the state—this court also found that the petitioner failed [to prove] prejudice because, notwithstanding . . . Lorenzen's cross-examination, the evidence was going to be presented to the jury." (Emphasis altered.)

On November 4, 2020, the petitioner sought further articulation from the habeas court on the ground that the court "still [did] not address the petitioner's ineffectiveness claim regarding uncharged misconduct evidence" in that, inter alia, it "[did] not address the additional misconduct evidence that [Lorenzen] elicited that was not the subject of any court ruling." The habeas court granted the motion for further articulation in part and denied it in part, and issued a written decision. The habeas court articulated, inter alia, that "the court did not find anything objectively unreasonable about . . . Lorenzen's performance representing the petitioner, including his conduct [in] handling the entirety of the prior misconduct issue. That decision, as decisions are meant to be, was based on the sum of the whole of the evidence before the court." The court further explained: "The court found nothing objectively unreasonable about an experienced defense attorney's judgment that, from his reading of the room, he believed it better to deal with things the [jurors were] likely considering in the back of their minds 'head on' instead of allowing them to linger. . . . [N]one of this evidence had any material impact on the outcome of the trial."[4] Finally, the court held: "Given the substantial circumstantial evidence against the [petitioner]—he was the only person standing close to the victim; the uncontroverted evidence that the gunshot was from close range; and the eyewitness account and incriminating statements provided by his girlfriend—the court finds that the misconduct evidence as a whole was immaterial to the overall outcome of the case. Therefore, the petitioner suffered no prejudice from this evidence within the meaning of *Strickland* . . . ." The petitioner did not seek further review from this court.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discre-

tion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 181 Conn. App. 572, 577–78, 187 A.3d 543, cert. denied, 329 Conn. 909, 186 A.3d 13 (2018).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Although a petitioner can succeed only if he satisfies both prongs, a reviewing court can find against the petitioner on either ground . . . . "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . . Nevertheless, [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Charles* v. *Commissioner of Correction*, 206 Conn. App. 341, 346–47, A.3d (2021).

On appeal, the petitioner takes issue with Lorenzen's decision to question Cardona and Jacobson regarding the July, 2009 incident. He argues that the issue was not "lurking," as suggested by Lorenzen, because the court had already issued an order limiting Colon's anticipated testimony, and the cross-examination of Cardona and Jacobsen occurred prior to Colon's testimony. Although this is accurate, Lorenzen knew, on the basis of the court's prior ruling, that Colon was going to testify that he observed the petitioner with a .38 revolver in July, 2009. Rather than leave the jury to speculate as to why the petitioner possessed such a weapon, Lorenzen made the strategic decision to fill in the gaps. We agree with the habeas court's conclusion that there is "nothing objectively unreasonable about an experienced defense attorney's judgment that, from his reading of the room, he believed it better to deal with things that the [jurors were] likely considering in the back of their minds 'head on' instead of allowing them to linger."

Moreover, the record reveals that Lorenzen attempted to discredit Jacobsen's testimony by eliciting from him and Cardona evidence of other unsubstantiated allegations that Jacobson had made against the petitioner. It cannot reasonably be disputed that Lorenzen's inquiry of Cardona and Jacobson, viewed with an eye toward emphasizing Jacobson's history of lodging unsubstantiated allegations of wrongdoing against the petitioner, could have inured to the favor of the petitioner. We cannot conclude that a trial strategy aimed toward undermining the veracity or accuracy of the state's witnesses, although ultimately unsuccessful in this case, was not sound, or that it constituted ineffective assistance of counsel.[5] Accordingly, the petitioner failed to demonstrate that Lorenzen's representation of him was deficient.

For the foregoing reasons, we conclude that the petitioner has failed to demonstrate that the issues raised in his petition for certification to appeal are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. Thus, the petitioner has failed in his burden of demonstrating that the court's denial of his petition for certification to appeal constituted an abuse of discretion. See

*Johnson* v. *Commissioner of Correction*, supra, 181 Conn. App. 577–78.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] "The [petitioner] was on parole at the time of the shooting and was required to wear an ankle bracelet to ensure that he complied with a 9 p.m. to 5 a.m. curfew. There was a monitoring unit inside the [petitioner's] apartment that would indicate to the monitoring agency if the [petitioner] exceeded a range of approximately 150 feet. Police determined that the victim's body was located approximately 125 feet from the monitoring unit." *State* v. *Torres*, 168 Conn. App. 611, 614 n.1, 148 A.3d 238 (2016), cert. granted in part and remanded, 325 Conn. 919, 163 A.3d 618 (2017).

[2] The petitioner alleged additional bases for his claim that Lorenzen failed to provide effective assistance, but those other bases are not the subject of this appeal.

[3] In his direct appeal, the petitioner argued that the trial court had "abused its discretion in admitting Colon's testimony that he previously had possessed a revolver because the evidence is not relevant and, alternatively, is more prejudicial than probative." *State* v. *Torres*, supra, 168 Conn. App. 619.

[4] The court denied the petitioner's request that it articulate whether Lorenzen's cross-examination "open[ed] the door for the state to elicit testimony that the petitioner had been arrested for the July, 2009 shooting and that cocaine and heroin had been found in a search of his apartment." The court explained: "Given the finding . . . that [Lorenzen's] overall conduct was not deficient as to the uncharged misconduct issue, this question seeking to parse the pieces of that evidence into smaller bits is no longer relevant." To the extent the petitioner argues that Lorenzen's cross-examination opened the door to questions regarding the petitioner's drug dealing, the jury had already heard that he was involved in a "turf" war with the victim. The petitioner's girlfriend testified that the victim "came over there fighting for the turf and that he shot him."

We separately note that, by virtue of the fact that the petitioner had a parole officer, the jury was aware that he had a criminal history. Cardona also testified regarding the ankle monitoring bracelet that the petitioner was required to wear as a condition of his parole.

[5] Because we conclude that the petitioner failed to meet the performance prong of *Strickland*, we need not address the prejudice prong.